Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **SOPHIA MARGARITA LINARES MEDINA Y OTROS**<br><br>Apelada<br><br>v.<br><br>**BAYER Y OTROS**<br><br>Apelante | KLAN202400327 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Ponce**<br><br>Civil núm.:<br>**JD2022CV00327 (605)**<br><br>Sobre:<br>**DESPIDO INJUSTIFICADO (LEY NÚM. 80) Y OTROS** |

Panel integrado por su presidenta la juez Domínguez Irizarry, la juez Grana Martínez y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante nos, Monsanto Caribe, LLC, en adelante Monsanto, y Bayer Puerto Rico, Inc., en adelante Bayer, en conjunto, apelantes, solicitando que revisemos la *"Sentencia"* del Tribunal de Primera Instancia, Sala Superior de Ponce, en adelante TPI-Ponce, en la que declaró "Ha Lugar" la *"Moción de Sentencia Sumaria"* presentada por Sophia Margarita Linares Medina y Kelwin José Linares Medina, en conjunto, apelados.

Por los fundamentos que expondremos a continuación *confirmamos el dictamen apelado.*

**I.**

Los hechos que dan curso a la controversia que hoy nos ocupa, tuvieron su génesis durante el año 2021, cuando Kelwin Linares Ramos, el fenecido padre de los apelantes y en adelante,

Linares Ramos, era empleado de Monsanto.[1] A finales del año 2021, Monsanto, luego de ser adquirida por Bayer, decidió llevar a cabo una reorganización de sus operaciones y reducir su empleo en Puerto Rico, por lo que notificó a Linares Ramos de la terminación de su empleo.[2] A raíz de dicha reorganización, Monsanto decidió ofrecer al empleado Linares Ramos, quien quedaría cesanteado, un pago voluntario de compensación por separación de empleo, a cambio de que este firmara un acuerdo en el que renunciaba a cualquier reclamación presente y futura que pudiera tener en contra de los apelantes.[3]

Así las cosas, el 8 de octubre de 2021, Linares Ramos suscribió un *"Acuerdo Confidencial de Separación y Relevo General"* con los apelantes.[4] Surge del aludido acuerdo, en lo aquí pertinente, que a pesar de que la fecha de culminación de su empleo sería efectiva el 30 de noviembre de 2021, su último día de empleo activo sería el 22 de octubre de 2021.[5] Sin embargo, Bayer se reservó el derecho de extender el periodo de trabajo de Linares Ramos luego de dicha fecha, notificándolo así con catorce (14) días de anticipación.[6] Además, establece que la compensación que se le pagaría por separación de empleo sería de $154,474.59, pagadera dentro del término de quince (15) días luego de la expiración del periodo de notificación de catorce (14) días, antes mencionado.[7]

Luego de suscrito el contrato, el 3 de noviembre de 2021, Linares Ramos falleció.[8] A raíz de su muerte, la sucesión de Linares Ramos, compuesta por sus hijos, Sophia Linares Medina y Kelwin Linares Medina, menor de edad representado por su madre

---

[1] Apéndice del recurso, pág. 39.
[2] *Id.* pág. 14.
[3] *Id.* pág. 52.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* pág. 54.
[8] Id. pág. 44.

Jackeline Medina Rivera, presentaron el 9 de junio de 2022 una *"Querella"* ante el Tribunal de Primera Instancia, Sala de Juana Díaz.[9] Plantearon, en síntesis, que a pesar de varias reclamaciones extrajudiciales, Monsanto y Bayer no habían realizado el pago establecido en el aludido acuerdo.[10] Además, plantearon que comenzarían una reclamación al procedimiento especial de carácter sumario establecido en la Ley Núm. 2 del 17 de octubre de 1961, conforme a la cual alegan que los apelantes deberían pagar una penalidad doble.[11] Finalmente, solicitaron que el Foro Primario declarara "Con Lugar" la *"Querella"* y ordenara el pago inmediato de $617,898.36.[12]

Por su parte, el 22 de junio de 2022 Monsanto presentó *"Contestación a la Querella"*.[13] Planteó, en síntesis, que Bayer no había sido patrono de Linares Ramos, por lo que negaba todas las alegaciones de la *"Querella"*.[14] Además, alegaron que la fecha de terminación del empleo había sido fijada para el 30 de noviembre de 2021, y que Linares Ramos había fallecido el 3 de noviembre de 2021.[15] En su alegación responsiva, aducen que esto implicaba que la fecha de terminación del empleo nunca advino efectiva, por su fallecimiento.[16]

Luego de varios trámites procesales, el 8 de noviembre de 2022, los apelados presentaron una *"Moci[ó]n de Sentencia Sumaria"*.[17] En la misma, la parte proponente expuso los siguientes *hechos sobre los cuales no había controversia*:

---

[9] Apéndice del recurso, pág. 1. La querella fue posteriormente trasladada al TPI-Ponce, el 13 de junio de 2022. (Nota al calce en el apéndice del recurso, página 5).
[10] Apéndice del recurso, pág. 0003.
[11] *Id.*
[12] *Id.*
[13] *Id.* pág. 5.
[14] *Id.* pág. 6.
[15] *Id.* pág. 7.
[16] *Id.*
[17] *Id.* pág. 13

1. Que los querellantes son:
   a. Sophia Margarita Linares Medina, mayor de edad por Emancipación.[18]
   b. Kelwin José Linares Medina, menor de edad, representado en este acto por su madre con custodia y patria potestad la Sra. Jackeline Medina Rivera.[19]

2. Ambos querellantes residen en:
   G-5 Calle Amaranta
   Urb. Jardines de Fargot
   Ponce, PR 00716-4025
   Teléfonos: 787-410-2955 y 787-974-2110.[20]

3. Que ambos querellantes, en unión a la Parte Indispensable María Isabel Linares Benetti, son hijos del Sr. Kelwin Linares Ramos, quien falleció el día 3 de noviembre de 2022, según lo acredita la Resolución sobre Declaratoria de Herederos JD2022CV00077 Norma Benetti Loyola vs. ExParte, dictada el día 16 de febrero de 2022.[21]

4. Que la menor María Isabel Linares Benetti se acumula en este pleito como Parte Indispensable.[22]

5. Que los referidos son herederos del Sr. Kelwin Linares Ramos.[23]

6. La Querellada Bayer Puerto Rico es una Corporación con arreglo a las leyes pertinentes haciendo negocios en:
   Carr.1, Km 108.7, Comunidad Santi, en Juana Díaz, PR 00795
   Dirección Postal: PO Box 788, Santa Isabel, PR 00757
   Teléfono: 787-260-2916.[24]

7. La querellada Monsanto Caribe, LLC. (en adelante Monsanto) es una Corporación con arreglo a las leyes pertinentes y fue patrono del fenecido Kelwin Linares Ramos en:
   Carr.1, Km 108.7, Comunidad Santi, en Juana Díaz, PR 00795
   Dirección Postal: PO Box 788, Santa Isabel, PR 00757
   Teléfono: 787-260-2916[25]

---

[18] Apéndice del recurso, pág. 39.
[19] *Id.* pág. 40.
[20] *Id.*
[21] *Id.* pág. 44.
[22] *Id.* pág. 41.
[23] *Id.* pág. 44.
[24] *Id.* pág. 75.
[25] *Id.* pág. 76.

8.  La corporación querellada Bayer Puerto Rico adquirió las operaciones y activos de Monsanto, y/o adquirió un negocio en marcha.[26]

9.  Al realizar la compra de Monsanto, Bayer Puerto Rico se convirtió en patrono sucesor y/o patrono solidario "joint employer" del Sr. Kelwin Linares Ramos. [27]

10. Ambas empresas, Monsanto y Bayer Puerto Rico, se consideran como un solo plano patrono del Sr. Linares Ramos.[28]

11. Las querelladas son responsables de forma solidaria de las acciones aquí instadas.[29]

12. Que las corporaciones querelladas eran patronos del Sr. Kelwin Linares Ramos.[30]

13. Las corporaciones querelladas despidieron al Sr. Kelwin Linares Ramos, y acordaron que el último día de trabajo de este era el 22 de octubre de 2021.[31]

14. La única disposición contractual que extendía u obligaba al Sr. Linares a realizar trabajos con posterioridad al 22 de octubre de 2021, se encuentra consignada en el Párrafo 3 de la Página 1 del (ANEJO VII "*ACUERDO CONFIDENCIAL DE SEPARACIÓN Y RELEVO GENERAL*", Párrafo 3, Página 1).[32]

15. Conforme el contrato, si las querelladas querían extender el periodo de trabajo del Sr. Linares Ramos, superando la fecha del 22 de octubre de 2021, tenían que notificárselo al Sr. Linares con 14 días de anticipación.[33]

16. El *ACUERDO CONFIDENCIAL DE SEPARACIÓN Y RELEVO GENERAL* se subscribió el 8 de octubre de 2021.[34]

17. Que precisamente el mismo día en que se subscribió el contrato, vencía el término de 14 días para notificarle al Sr. Linares que su trabajo continuaba por encima del 22 de octubre, cosa que no pasó, relevando a Linares de cualquier y toda obligación ulterior al 22 de octubre de 2021.[35]

18. El Sr. Linares cumplió con todo lo acordado y jamás fue notificado con 14 días de antelación al 22 de octubre, de

---

[26] Apéndice del recurso, pág. 52.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* pág. 64.
[35] *Id.* pág. 52.

cambios a su fecha de terminación de trabajo conforme lo obliga el contrato.[36]

19. Las querelladas estipularon con el Sr. Linares Ramos la suma de $154,474.59 como indemnización y compensación salarial.[37]

20. Las querelladas adeudan en concepto de salarios dejados de percibir por el Sr. Kelwin Linares, ahora a los querellantes, la cantidad de $154,474.59.[38]

21. Que los requisitos contractuales para el pago se encuentran consignados en el primer párrafo de la página 3 del *ACUERDO CONFIDENCIAL DE SEPARACIÓN Y RELEVO GENERAL*, los cuales se cumplieron en su totalidad por el Sr. Linares.[39]

22. Que el pago está vencido, es líquido y exigible desde el 15 de diciembre de 2021.[40]

23. Pese a los innumerables requerimientos extrajudiciales, al día de hoy las querelladas no han pagado lo acordado en la Sucesión del Sr. Kelwin Linares Ramos.[41]

24. Las demandadas continuaron realizando el pago de salario al Sr. Linares después de su fallecimiento. Evidencia irrefutable de que el Sr. Linares cumplió con toda su obligación.[42]

25. En virtud del contrato las partes acordaron lo siguiente:
    "*Usted y la Compañía acuerdan que las leyes de Puerto Rico regirán la validez y la interpretación del presente Acuerdo*".[43]

En su moción, los apelantes sustentaron las 25 determinaciones de hechos con los siguientes documentos:

1. *"Juramento"* de Sophia Margarita Linares Medina del 7 de noviembre de 2022.

2. *"Querella"* incoada por los apelados el 9 de junio de 2022.

3. Declaratoria de herederos de Linares Ramos.

4. *"Contestación a la Querella"* de los apelantes del 22 de junio de 2022.

---

[36] Apéndice del recurso, págs. 52-54.
[37] *Id.* pág. 54.
[38] *Id.*
[39] *Id.*
[40] *Id.* pág. 52.
[41] *Id.* pág. 66.
[42] *Id.* pág. 67.
[43] *Id.* pág. 63.

5. *"Acuerdo Confidencial de Separación y Relevo General"* entre Linares Ramos y los apelantes, del 8 de octubre de 2021.

6. Comunicación vía correo electrónico entre las partes del 4 de mayo de 2022.

7. Estados bancarios de Linares Ramos.

En respuesta, el 20 de diciembre 2022 los apelantes presentaron *"Oposición a Moción de Sentencia Sumaria".*[44] Plantearon, en síntesis, que al momento de su fallecimiento, Linares Ramos no había terminado el restante acordado de su jornada de empleo, ya que el acuerdo establecía que su terminación sería efectiva el 30 de noviembre de 2021, por lo que nunca advino elegible al pago del acuerdo.[45] Añaden, que los apelados, recibieron un beneficio de $336,000.00 por concepto de la póliza de seguro de vida que tenía vigente el señor Linares Ramos, como parte de los beneficios de su empleo con Monsanto.[46]

Así las cosas, el 23 de febrero de 2024, notificada el 8 de marzo de 2024, el TPI-Ponce emitió *"Sentencia"* declarando "Ha Lugar" la *"Moción de Sentencia Sumaria"* presentada por los apelados y ordenó a Monsanto y Bayer a pagar la suma de $154,474.59.[47] Estableció el Foro Primario que *este caso se trataba de una causa de acción por incumplimiento de contrato y no una reclamación laboral.*[48] Añadió, que surge de las cláusulas del contrato que el último día de empleo activo de Linares Ramos sería el 22 de octubre de 2021 y que Monsanto no había modificado dicha fecha.[49] Expuso, además, que Linares Ramos tenía siete (7) días luego de suscrito el contrato para revocar su decisión, por lo que, transcurrido ese término el 16 de

---

[44] Apéndice del recurso, pág. 69. Hacemos constar que del expediente que obra en autos, no surgen los documentos con los que la apelante sustentó su oposición.

[45] *Id.* pág. 70.

[46] *Id.*

[47] *Id.* págs. 126 y 142.

[48] *Id.* pág. 139.

[49] *Id.* pág. 140.

octubre de 2021 sin que Linares Ramos lo revocara, el acuerdo advino en pleno vigor y ejecutable, convirtiéndose este último en acreedor de la compensación por separación.[50] Sostuvo el TPI-Ponce que la obligación de Monsanto de realizar el pago comenzaría, según las cláusulas del acuerdo, quince (15) días luego del 30 de noviembre de 2021, por lo que la deuda es una líquida, vencida y exigible.[51] Finalmente, concluyó que el pago recibido por los herederos en concepto de la póliza de seguro de vida de Linares Ramos, nada tenía que ver con los beneficios estipulados en el acuerdo, ya que al momento de su fallecimiento, Linares Ramos era empleado de Monsanto y acreedor del beneficio de separación, ya que el acuerdo había advenido en pleno vigor el 16 de octubre de 2021.[52]

Inconformes con la aludida determinación, el 4 de abril de 2024, Monsanto y Bayer acudieron ante nos mediante *"Apelación"*. Plantean:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, AL CONDENAR A MONSANTO Y BAYER AL PAGO VOLUNTARIO DE COMPENSACIÓN POR SEPARACIÓN, BASANDO SU DICTAMEN EN UNA INTERPRETACIÓN IRRAZONABLE, INFUNDADA Y ARBITRARIA SOBRE EL LENGUAJE Y TEXTO DEL ACUERDO DE SEPARACIÓN Y RELEVO; MÁXIME CUANDO DICHA INTERPRETACIÓN NECESARIAMENTE CONLLEVA LA NULIDAD *AB INITIO* DEL ACUERDO POR AUSENCIA DE OBJETO Y CAUSA.**

Mediante *"Resolución"* del 8 de abril de 2024, le concedimos cinco (5) días a los apelantes para que evidenciara el cumplimiento con lo dispuesto por las Reglas 13(B) y 14(B) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B). Además, concedimos a la parte apelada un término de treinta (30) días para presentar su

---

[50] Apéndice del recurso, pág. 141.
[51] *Id.*
[52] *Id.* pág. 142.

oposición. En cumplimiento, el 6 de mayo de 2024, los apelados presentaron *"Alegato del Recurrido"*.

Con el beneficio de la comparecencia de ambas partes, y perfeccionado el recurso, procedemos a expresarnos.

**II.**

**A. Apelación**

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho

estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. y otro v. ELA y otros*, 2023 TSPR 24, 212 DPR ___ (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Oriental Bank v. Caballero García*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979-980 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar ***prueba incontrovertible sobre todos los elementos indispensables de su causa de acción***. Id.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma, con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, el tribunal no estará obligado a considerar su

pedido. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón*, supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud, viene obligado a enfrentar la moción de su adversario de forma *tan detallada y específica como lo ha hecho la parte promovente* puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. Id.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. Id. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. Íd.,

pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón*, supra, pág. 44.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al Foro Primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
>
> *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos

materiales realmente están incontrovertidos, debemos revisar *de novo* si el Foro Primario aplicó correctamente el derecho. Id.

### C. Derecho Contractual

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda.* Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1232 del Código Civil de 2020, 31 LPRA sec. 9753; *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018); *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 727 (2018). Los contratos tienen fuerza de ley entre las partes contrayentes, ante sus sucesores y ante terceros quienes vienen obligadas a observar sus términos en la forma que dispone la ley. Artículo 1233 del Código Civil de 2020, supra, sec. 9754; *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 165 (2023).

Para que exista un contrato válido deben concurrir los elementos siguientes: el consentimiento de las partes sobre el objeto y la causa. Artículo 1237 del Código Civil de 2020, supra, sec. 9771; *Cruz, López v. Casa Bella y otros,* supra; *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 186 (2022); *Demeter Int'l v. Srio. Hacienda*, supra, pág. 727; *Negrón Vélez v. ACT*, 196 DPR 489, 505 (2016).

Estos requisitos se refieren a que el acuerdo sea consensual; que exista como objeto una polémica judicial o extrajudicial entre las partes que dé lugar a la transacción, y su causa que consiste en eliminar la controversia mediante las concesiones recíprocas. *Negrón Vélez v. ACT*, supra, pág. 505; *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870-871 (1995).

### D. Incumplimiento de Contratos

Los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 230; *Betancourt González v. Pastrana Santiago*, supra, pág. 182. Un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 230; *Demeter Int'l v. Srio. Hacienda*, supra, págs. 726-727. De otra parte, nuestro Tribunal Supremo ha expresado que en las obligaciones contractuales la ley primaria es la voluntad de las partes, y los tribunales no pueden relevar a una parte de cumplir con lo pactado cuando es legítimo y no contiene vicio alguno. *Oriental Financial v. Nieves*, 172 DPR 462, 471 (2007*); De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

Ahora bien, nuestro Código Civil dispone que cuando una de las partes en un acuerdo incumple con su deber de entregar o hacer, incurre en mora, desde que el acreedor exige, judicial o extrajudicialmente, el cumplimiento de la obligación. Artículo 1159 del Código Civil de 2020, supra, sec. 9311. Importante es señalar que el acreedor no vendrá obligado a reclamarle a su deudor para que exista la mora, cuando exista una fecha cierta para el cumplimiento de la obligación. Artículo 1160(b) del Código Civil 2020, supra, sec. 9312.

Como consecuencia del incumplimiento contractual, nuestro Alto Foro ha reconocido que el perjudicado tiene la facultad, como regla general, de exigir el cumplimiento específico de lo pactado, o la resolución de la obligación. *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 347 (1989). No solo eso, la norma estatutaria y el derecho

jurisprudencial ha reconocido que, en estos casos, la parte a la que se le incumple puede también solicitar el resarcimiento de daños. Id.; Código Civil de 2020, supra, sec. 9303. Véase, además, *800 Ponce de León v. AIG,* 205 DPR 163,181 (2020).

**III.**

Los apelantes recurren ante nos, arguyendo que el TPI-Ponce incidió al dictar sentencia sumaria en su contra y ordenar el pago de los $154,474.59. Alegan estar de acuerdo con las determinaciones de hechos realizadas por el Foro Primario, pero no así con la interpretación dada por el aludido foro a las cláusulas del acuerdo.

Plantean, que la causa del contrato era la terminación de empleo de Linares Ramos y que la contraprestación era un pago voluntario de compensación por separación a cambio de que Linares Ramos renunciara a cualquier causa de acción que pudiese tener en contra de Monsanto y Bayer por terminación del empleo. Sostienen, que dicha terminación de empleo nunca sucedió por la muerte de Linares Ramos, por lo que el contrato advino nulo *ab initio* por no tener los elementos necesarios para su constitución, no estando entonces Monsanto obligado a el pago de la compensación.

Luego de realizar un examen del expediente que nos ocupa, de las alegaciones de ambas partes, además de analizar el derecho aplicable, concluimos que *no incidió* el Foro Primario al declarar "Ha Lugar" la solicitud de sentencia sumaria presentada por los apelados. Hemos ejercido nuestra función revisora, y entendemos que de los documentos presentados no surge controversia alguna de hechos medulares que amerite que el presente asunto sea dirimido mediante la vía ordinaria. Veamos.

Surge de la prueba ante nos y de las propias admisiones del apelante, que no hay controversia en cuanto al contenido del acuerdo y que las partes establecieron en el aludido acuerdo los

elementos para que sea válido un contrato: (1) una causa, que fue la separación del empleo de Linares Ramos; (2) un objeto, el beneficio de compensación de $154,474.59 y; (3) su consentimiento, a través de su firma.

El aludido acuerdo establecía, además, que el **22 de octubre de 2021** sería el último día de empleo activo de Linares Ramos -a pesar de que la terminación del empleo fuese efectiva el *30 de noviembre de 2021*- y que de Monsanto requerir extender el periodo de empleo activo superando el 22 de octubre de 2021, *debían informarle a Linares Ramos dentro de un término no menor de catorce (14) días.*

En cuanto a la efectividad que tendría el acuerdo, el párrafo veintitrés (23) establece que luego de firmado el contrato, Linares Ramos tenía un término de siete (7) días para decidir revocar su decisión, provocando así que *el acuerdo no entrara en vigor ni fuera ejecutable hasta que dicho periodo hubiere transcurrido.* De igual forma, surge del párrafo cuatro (4) del acuerdo que el pago de beneficio de compensación por separación sería pagado dentro del término de quince (15) días de la expiración del "periodo de notificación" para extender la fecha de empleo, es decir de los catorce (14) días, *siempre y cuando Linares Ramos firmara y devolviera el acuerdo a Monsanto y no revocara su aceptación.*

Es decir, las únicas dos (2) condiciones para que Linares Ramos fuera acreedor de la compensación de $154,474.59 por separación eran: (1) que este lo firmara y devolviera y; (2) que luego de haberlo firmado no revocara su decisión dentro del término de siete (7) días allí establecido. Siendo esto así, una vez transcurrió ese término, sin que hubiese sido revocado, el contrato se perfeccionó y el pago advino exigible. Surge del expediente y de las determinaciones que, el 8 de octubre de 2021, Linares Ramos firmó el acuerdo y el periodo de siete (7) días para revocarlo transcurrió el

16 de octubre de 2021, entrando el acuerdo en vigor y siendo ejecutable.

Además, en el acuerdo se establece que Monsanto y Bayer tenían un periodo de quince (15) días para realizar el pago, luego del "periodo de notificación".[53] Según estableció correctamente, el TPI-Ponce en su *"Sentencia"*, esa disposición constituía un plazo para realizar el pago y no se trataba de una condición suspensiva para que el contrato fuese ejecutable, pues no dependía de un hecho futuro incierto, sino que era una fecha en la que advenía exigible el pago. Partiendo desde la fecha en que culminó el período no trabajado, 30 de noviembre de 2021, Monsanto y Bayer tenían hasta el 15 de diciembre de 2021 para realizar el pago.

Luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de los apelados, y la revisión de *novo* sobre la misma, lo cual en derecho nos corresponde, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Ponce en su *"Sentencia"* se sustentan en los documentos presentados por los apelados.

A su vez, entendemos que los apelantes no pudieron controvertir los hechos, expuestos y probados, por los aquí apelados en su solicitud. El acuerdo realizado entre Linares Ramos y los apelantes se trató de un contrato que se perfeccionó una vez Linares Ramos firmó y transcurrió el periodo para su revocación sin que así lo hiciese. Por tratarse de un contrato perfeccionado, Monsanto y Bayer se obligaron a lo allí pactado. Por esto, resulta forzoso concluir que en el caso de marras el TPI-Ponce resolvió correctamente y procede *confirmar* su determinación.

---

[53] Apéndice del recurso, pág. 54.

**IV.**

Por los fundamentos antes expuestos, se *confirma* la *"Sentencia"* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones